UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
ALLSTATE INSURANCE COMPANY,                                 :
                                                            :  **MEMORANDUM**
                                        Plaintiff,          :  **DECISION AND ORDER**
                                                            :
            - against -                                     :  14-cv-5410 (BMC)
                                                            :
WINSTON TAPPER, M.D., et al.,                               :
                                                            :
                                        Defendants.         :
                                                            :
----------------------------------------------------------- X

**COGAN,** District Judge.

In this multi-defendant RICO case, plaintiff has settled or dismissed its claims against all but two of the defendants: Jean Claude Demetrius, M.D. and D&H Rehabilitation Medical, P.C. The Clerk has entered default against those defendants, and plaintiff now seeks default judgment, consisting of a declaratory relief and a money judgment in the amount of $1,384,634.84. For the reasons set forth below, the motion is granted.

## BACKGROUND

The complaint, affidavits and exhibits submitted on this motion show a wide ranging scheme of no-fault accident insurance fraud. To put it succinctly, the submissions addressing the misconduct of the defendants at issue on the present motion show that those defendants submitted phony bills for reimbursement to Allstate. The bills were phony for a variety of reasons, but the principal ones were overstating the complexity of the examination; billing for tests that were never performed; cutting and pasting the data from prior tests and representing that it was the data from more recent tests; performing testing that was not medically necessary, just to generate reimbursable bills; misrepresenting that defendants' employees had performed

the medical tests when in fact independent contractors, who were not eligible for reimbursement, had performed them; and misrepresenting that defendants were in compliance with state and local licensing laws entitling them to receive no-fault insurance reimbursement when, in fact, defendants were not in compliance because, at least, they were paying kickbacks to their patients.

This scheme, according to the complaint, entailed hundreds of fraudulent charges that were mailed to plaintiff over a five-year period. The scheme was perpetrated under the corporate name of defendant D&H but orchestrated through its owner, defendant Dr. Demetrius (he has since lost his medical license). Based on these allegations, plaintiff has stated claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) against Dr. Demetrius and common law fraud and unjust enrichment against Dr. Demetrius and D&H. These claims seek recovery of $388,809.87 that plaintiff has paid to D&H, plus trebling of that amount under RICO, plus interest on the principle amount. In addition, plaintiff seeks a declaratory judgment that it does not have to pay $49,627.81 in bills that D&H has submitted but plaintiff has not yet paid.

**DISCUSSION**

In light of defendants' default, all of the well-pleaded allegations in plaintiffs' complaint pertaining to liability are deemed true. However, "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). Rule 55(b)(2) provides that when granting a default judgment, a court may conduct a hearing if it is necessary to "determine the amount of damages" or to "establish the truth of any allegation by evidence." According to the Second Circuit, however, it is not

necessary to conduct a hearing if a district court has "ensured that there was a basis for the damages specified in the default judgment," such as by relying on detailed affidavits and documentary evidence. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (internal quotation marks omitted).

Notwithstanding the principle that defendants are deemed to have admitted the factual allegations as to liability in plaintiff's complaint, plaintiff's memorandum of law in support of its motion for default judgment is directed entirely to establishing liability, and does not mention how damages should be calculated except to establish its right to treble damages under RICO and interest. Plaintiff goes to considerable length to show that it has established each element of RICO and, separately, of fraud. Plaintiff's determination to offer this level of detail may reflect, in part, its concern that with its claims principally based on the relatively complex theories of RICO and common law fraud, this Court might apply a high degree of scrutiny to its liability theories, notwithstanding that the default establishes the facts that give rise to liability.

It is true that in the default context, various decisions within this district could be interpreted as raising issues *sua sponte* that a defendant itself could and would have waived by appearing and failing to raise them. As one decision recently held:

> The fact that a complaint stands unanswered … does not suffice to establish liability on its claims. A default does not establish conclusory allegations, nor does it excuse any defects in the plaintiffs' pleading. Moreover, allegations that are "contrary to uncontroverted material in the file of the case" cannot be deemed well-pleaded, and may therefore be disregarded. Thus, a defendant's default does no more than concede the complaint's well-pleaded factual allegations; it remains the plaintiffs' burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action.

Mateo v. Universal Language Corp., No. 13 Civ. 2495, 2015 WL 5655689, *4 (E.D.N.Y. Sept. 4, 2015) (citations omitted). Indeed, there are Second Circuit decisions, some of which are cited in

Mateo, which, albeit in dictum, would support the notion that the district court must, or at least may, scrutinize the complaint to make sure that it would suffers from no legal infirmities that would cause it to crumble under a Rule 12(b)(6) motion. See Greathouse v. JHS Sec. Inc., 784 F.3d 105, 116 n. 17 (2d Cir. 2015).

I have no difficulty with this principle to the extent it directs a district court not to enter a default judgment on a frivolous complaint, see Fitzgerald v. First East Seventh Street Tenants Corp., 221 F.3d 362, 364 (2d Cir. 2000), or on one that is inherently contradictory or is contradicted by the motion for default judgment itself, see Ho v. Calabrigo, No. 15 Civ. 3730, 2015 WL 5719738 (E.D.N.Y. Sept. 29, 2015). But I think the use of this power in the default context has to be carefully circumscribed.

For one thing, the holdings of the Second Circuit, as opposed to its dictum, do not appear to distinguish between deemed admissions of fact giving rise to liability and the establishment of liability itself. See Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995) ("[t]here is no question that a default judgment establishes liability"); Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 70 (2d Cir. 1971) ("there was no burden on [the plaintiff] to show that any of [the defendant's] acts pleaded in the complaint violated the antitrust laws nor to show that those acts caused the well-pleaded injuries, except as we have indicated that it had to for the purpose of establishing the extent of the injury caused [to the plaintiff], in dollars and cents"), rev'd on other grounds, 409 U.S. 363, 93 S.Ct. 647 (1973); see also Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241 (2d Cir. 2004) (comparing unopposed motion for summary judgment, which requires scrutiny of the record and a determination of entitlement, with a motion for a default judgment, which, as to liability, does not).

4

More fundamentally, it is inappropriate and, indeed, unseemly for a court to act as the lawyer for a defendant that has chosen to default. Judge Korman discussed this phenomenon at some length in his recent partial concurring opinion in Greathouse, where he observed:

> There is something wrong when a case or controversy, to the extent that it exists, is principally between a plaintiff and the judges deciding the case.…
>
> The magistrate in the case essentially took it upon himself to act as counsel for parties who had not bothered themselves to appear in court. Acting as both counsel and judge, the magistrate – affirmed by the district judge – *sua sponte* denied damages on a previously entered default judgment on the basis of a defense that the defendants may have waived if they had appeared and not timely raised it. Then, we appointed counsel to defend on appeal the lawyering of these judicial officers on behalf of parties who never even appeared in court. Thus, through the magistrate judge, the district court judge, and the able counsel appointed by this Court, defendants may have obtained far more capable representation than they would have obtained had they not chosen voluntarily to default and instead retained their own counsel.

784 F.3d at 119, 120-21 (citation omitted).[1] Presumably, most federal judges could provide at least as capable a defense in the Rule 12(b)(6) context as most attorneys who would be retained by a defendant who chooses to default in a case. But that is not, it seems to me, the role that courts should play.

In addition, there may be strategic reasons why a defendant, if it were to appear, would choose not to raise a Rule 12(b)(6) challenge to a complaint, even a defective complaint. For example, if a defense attorney knows that a motion is likely to prevail, but that leave to amend is likely, and expects that the plaintiff will be able to successfully amend, and the operative statute provides for fee-shifting (as is the case under RICO and the FLSA), then a successful Rule 12(b)(6) motion will achieve nothing but running up his client's fee-switched bill. Similarly, an able defense attorney may conclude for reasons of fee-switching that his client should allow the

---

[1] Other than the footnote cited above, the majority in Greathouse spent no time on this issue. It seems clear that it was most interested in reaching the substantive issue in the case – whether a retaliation claim under the Fair Labor Standards Act encompasses oral complaints from an employee to his employer rather than merely a written complaint to the Department of Labor.

default and spend his time protecting his assets, rather than increasing the judgment by running up a double (plaintiff's switched fee and his own) attorneys' bill. I see no reason why courts should interject themselves in the deliberate decision of defendants not to appear and supply a free defense that a defendant has elected to forego.

I therefore would not undertake the level of strict scrutiny of a complaint on a default judgment motion that I observe in some of the cases to ascertain the existence of any possible defenses, and would instead apply a standard of plain inadequacy. If the complaint is contrary to the purpose of the statute or the law, or a judgment would tend to reflect negatively on the court in light of that purpose, then a default judgment should be denied. But the fact that a complaint could have been pled with more particularity, or raises potential but not determinative issues with regard to waivable affirmative defenses, then it is not the business of the court to inject itself. That is the defendant's option, and it has chosen not to utilize it.

Applying that standard, I have no difficulty finding that plaintiff's submissions adequately establish liability. It easily satisfies the elements of RICO. It is a five year, closed end scheme of fraudulent bills that were sent through the mail. Plaintiff has alleged that D&H constitutes an "enterprise" and I see no plain inadequacy about that legal conclusion. Dr. Demetrius is alleged to have directed the enterprise and thus obviously participated in it.

Both plaintiff's RICO claim and its fraud claim could have contained greater particularity. The fraudulent statements are pled as a group, and no particular statement is identified as fraudulent, nor is there any indication of time, place and manner as to those statements. Again, however, those issues were for defendants to raise. There is nothing inherently implausible or contradictory about the facts that plaintiff has set forth. The facts are sufficient to establish liability.

As to damages, as noted, I do not have the benefit of argument from plaintiff as to its proof. It appears to be proceeding on the theory that it can simply total all amounts that it paid to defendants, treble it, add interest to the principle, and recover that amount. Having carefully considered the matter, I am prepared to accept plaintiff's theory. But it is not nearly as straightforward as plaintiff seems to suggest.

The difficulty with plaintiff's theory is that it effectively requires the Court to find that there was not a single bill that defendants submitted that reflected a proper amount billed for a necessary service by a bona fide employee of D&H. Because plaintiff has not given me the particulars of every bill, this conclusion is not self-evident. It requires some extrapolation to conclude that every bill that plaintiff paid over a five year period was fraudulent without some evidence to that effect. Even plaintiff's audit report on electrodiagnostic testing, which has not been submitted on this motion but is only summarized in the amended complaint, references nine "match groups" consisting of a total of 17 patients to conclude that the billings were fraudulent bills and does not reach a conclusion that there were no bona fide bills.

Notwithstanding the less-than-robust showing on damages, I accept plaintiff's theory for several reasons. First, two of plaintiff's allegations, which are related, and are deemed admitted for purposes of liability, make all of the bills improper, whether they were for fraudulent tests or not. These are: (1) defendants classified all of their employees as independent contractors, and thus had no right under state and local law to obtain reimbursement for their services; and (2) defendants paid kickbacks to patients in at least some instances, which also disqualified D&H from participating as a state no-fault provider under state and local law. These false statements made the submission of every bill improper.

7

Second, although plaintiff has not demonstrated the falsity of every bill individually, the 17 patients tested and found to have received fraudulent results are sufficient to establish a *prima facie* case that they all were. In reaching this conclusion, I have to recognize that putting an insurance company to the burden of proving every bill fraudulent would likely be cost prohibitive. There is only so much time and money that a court can reasonably expect an insurance company to commit to chase down a de-licensed doctor and what appears to be a shell company. The fact is that these no-fault fraudulent insurance schemes drive up the premiums for all consumers, and placing an undue burden on the insurance company to prove the conduct beyond any doubt would only make it worse.

Finally, and relatedly, I am willing to somewhat relax plaintiff's burden of proof because if defendants had wished to reduce their damage exposure, they could have appeared even at the default stage to demonstrate the bona fides of at least some the services that they rendered. They have not.

Having found that plaintiff has sufficiently, if not overwhelmingly, demonstrated its entitlement to recovery of all amounts paid, the rest of its claims fall readily into place. It has established the amounts paid as $388,809.87 through documentary evidence. It has shown that this amount, because it is based, in part, on fraud, is subject to mandatory prejudgment interest under state law of 9%. See N.Y. C.P.L.R. §§ 5001, 5004. It computes that as of each January 1 following the year in which payments were made, but I think that is cumbersome, and I direct plaintiff to recalculate the amounts owed as of the mid-date of the fraudulent scheme since the scheme was ongoing. See C.P.L.R. § 5001(b); Allstate Insurance Co. v. Nazrov, No. 11 Civ. 6187, 2015 WL 5774459, at *22 (E.D.N.Y. Sept. 30, 2015). It also follows that the principal amount is subject to trebling under RICO. Finally, plaintiff is entitled to a declaration that it has

no obligation to pay any bills that have been submitted but remain unpaid, which it asserts total $49,627.81.

## CONCLUSION

Plaintiff's motion for a default judgment is granted. Plaintiff is directed to file a letter containing a revised prejudgment interest calculation as described above, with a date ending two days after the date of docketing of this decision. Upon receipt of that submission, the Court will direct entry of judgment.

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
       November 9, 2015